IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,  :
            :
    v.      :  CRIMINAL NO. 10-478
            :  CIVIL NO. 12-975
            :
RICHARD CREAMER    :
            :
            :

## OPINION

**Slomsky, J.**              **August 24, 2012**

## I. INTRODUCTION

Before the Court is Defendant Richard Creamer's ("Defendant") *pro se* Motion to Vacate, Set Aside, or Correct [a] Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (Doc. No. 131.) Defendant was convicted of one count of conspiring to manufacture 1,000 or more marijuana plants, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and one count of maintaining a place for the manufacture of controlled substances, in violation of 21 U.S.C. § 856(a)(2). In his Motion, Defendant challenges his sentence of 60 months incarceration, alleging that his counsel rendered ineffective assistance in violation of the Sixth Amendment to the United States Constitution. (Id.) He also challenges the part of his sentence requiring him to pay restitution in the amount of $91,943.08, claiming that this condition violates procedural due process under the Fifth Amendment to the United States Constitution. (Id.)

For reasons that follow, Defendant's Motion will be denied.[1]

---

[1]  For purposes of this Opinion, the Court has considered Defendant's Motion to Vacate, Set Aside, or Correct [a] Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. No. 131), the Government's Memorandum in Opposition to Defendant's Motion (Doc. No.

## II.    FACTUAL BACKGROUND

From March 2009 to July 16, 2009, Defendant Richard Creamer conspired with others to grow or manufacture at least 1,664 marijuana plants inside a warehouse located in Philadelphia, Pennsylvania, and to divide and distribute the marijuana.  (Doc. No. 138 at 12.)  An investigation by the Drug Enforcement Administration ("DEA") and testimony by fellow conspirators revealed the scope of the conspiracy as well as Defendant's role as a "share partner."  (Id. at 11; Presentence Investigation Report ("PSR") at 7.)

The conspiracy was comprised of at least 10 individuals, each with a specific role or task. (Doc. No. 138 at 3-10; PSR at 5-6.)  In October 2007, Defendant Creamer assisted in purchasing a warehouse located at 2310 North American Street in Philadelphia.  (Doc. No. 138 at 11; PSR at 16.)  The warehouse was then renovated to conduct an indoor marijuana grow operation.  (Doc. No. 1.)  At some point before May 15, 2009, unmetered power lines were fed into the warehouse in order to provide electricity for the lighting and cooling machinery necessary to grow and harvest the marijuana.  (Doc. No. 138 at 4; PSR at 7-9.)  On a monthly basis, the marijuana was harvested and prepared for distribution.  (PSR at 14.)

Defendant's role in the conspiracy was at the managerial level.  (See Doc. No. 130 at 20-21.)  As a licensed attorney before the instant conviction, Defendant created a business entity, 2306 American LLC, and opened a checking account in its name.  (PSR at 16.)  Through 2306

---

138), Petitioner's Reply to Government's Memorandum in Opposition (Doc. No. 139), the Government's Sur-Reply Letter Brief (Doc. No. 142), Defendant's Letter Response to Government's Sur-Reply (Doc. No. 144), the Sentencing Hearing Transcript (Doc. No. 130), the Presentence Investigation Report ("PSR"), a letter dated June 6, 2011 sent to the Court by Defendant after sentencing with attached character letters written on his behalf (Doc. No. 114), and the pertinent trial record.  No evidentiary hearing is warranted on the § 2255 Motion.  See United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

American LLC, Defendant managed the warehouse. (See id.) He was "a 50% share partner with [the owner and leader of the marijuana growing operation] in the purchase of the warehouse" and "received a 30%-35% share of the marijuana regularly harvested." (Doc. No. 138 at 11; PSR at 16.) The conspiracy ended on July 16, 2009, when agents of the DEA raided the warehouse and subsequently searched the premises and seized the marijuana and paraphernalia used in the grow operation.

On July 28, 2010, a grand jury in the Eastern District of Pennsylvania returned a six-Count Indictment charging Defendant and other conspirators with: conspiracy to manufacture 1,000 or more marijuana plants, in violation of 21 U.S.C. § 846 (Count One); manufacture of 1,000 or more marijuana plants and aiding and abetting, in violation of 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2 (Count Two); manufacture of 1,000 or more marijuana plants within 1,000 feet of a school and aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Count Three); possession with intent to distribute 1,000 or more marijuana plants, in violation of 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2 (Count Four); possession with intent to distribute 1,000 or more marijuana plants within 1,000 feet of a school and aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Count Five); and maintaining a place for manufacture of controlled substances, in violation of 21 U.S.C. § 856(a)(2) (Count Six). (PSR at 4.)

On July 29, 2010, before the Honorable David R. Strawbridge, a United States Magistrate Judge for the Eastern District of Pennsylvania, Defendant entered a plea of not guilty to all Counts. (Tr. of Arraignment, Doc. No. 9 at 6-7.) The record reveals the following exchange:

Courtroom Deputy:     Richard K. Creamer, you have been charged in Criminal
                      Indictment Number 10-478, defendant number one,
                      charging you in Count One with conspiracy to manufacture

a thousand or more marijuana plants; charging you in Count Two with manufacture of a thousand or more marijuana plants and aiding and abetting; that's also for Count Three; charging you in Count Four with possession with intent to distribute a thousand or more marijuana plants within a thousand feet of a school and aiding and abetting; that's also Count Five; and Count Six, charging you with maintaining a place for manufacture of controlled substances. How say you to the charges in this indictment, guilty or not guilty?

The Defendant:        Not guilty.

(Id.)[2]

On December 16, 2010, Defendant was found guilty by a jury on Counts One and Six, charging him with conspiring to manufacture, manufacturing, and possessing with intent to distribute 1,000 or more marijuana plants, and with maintaining a place for the manufacture of controlled substances, respectively. (Doc. No. 74; PSR at 4.) He was found not guilty on Counts Two to Five. (Doc. No. 74.)

On June 1, 2011, a sentencing hearing was held. (Doc. No. 130.) Defendant faced a mandatory minimum sentence of 120 months on the Count One conspiracy conviction, but the Court found that the Federal Sentencing Guidelines' safety-valve provision, U.S.S.G. § 5C1.2, applied in this case, thereby permitting a sentence to be imposed without regard to any statutory minimum sentence. (Id. at 23-25.) After considering the evidence in the record and presented at sentencing, including 9 character letters and the testimony of 14 character witnesses through a proffer from counsel (id. at 4, 35-36, 58), the Court sentenced Defendant to serve a 60-month

---

[2]  The numbering of Counts recited by the Courtroom Deputy is, in part, incorrect and apparently sourced from the list of offenses charged on the first page of the Indictment. (Doc. No. 1.) Defendant was charged with the offenses in the numbered Counts as listed on the preceding page of this Opinion.

period of incarceration on each Count, to run concurrently, to serve a period of supervised release, and to pay a fine and to make restitution to PECO (the utility company from which the conspirators stole electricity in order to grow the marijuana) in the amount of $91,943.08. (Id. at 66-68.)

Thereafter, in a letter to the Court dated June 6, 2011, Defendant noted that his counsel failed to forward 39 additional character letters for the Court to consider in crafting an appropriate sentence. (Doc. No. 114.) Defendant attached those additional letters to his June 6, 2011 letter which sought a reconsideration of the sentence imposed. (Id.)

On February 24, 2012, Defendant filed the instant Motion to Vacate, Set Aside, or Correct [a] Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (Doc. No. 131.) The Motion raises four issues that Defendant claims entitle him to relief. First, Defendant argues that trial counsel was ineffective by failing: (1) to inform him of the option to enter an open guilty plea; (2) to object to the Court's finding that 1,664 marijuana plants placed Defendant in the 100 kilogram to 400 kilogram weight category under the Federal Sentencing Guidelines; and (3) to forward 39 character letters to the Court.[3] (Id.) Defendant also argues that

---

[3]  In his Motion, Defendant notes that "[c]ounsel received more than 50 letters written on [his] behalf" but "[c]ounsel forwarded about six letters for consideration." (Doc. No. 131 at 26-27.) Although Defendant cites Exhibit #2 to demonstrate that counsel received a parcel of "over 40 letters from friends and family" and argues that these letters were not forwarded to the Court, this exhibit does not provide a list identifying these letters. (Id. at 25 n.1.) The only list of unforwarded letters provided to the Court was included in Defendant's letter dated June 6, 2011, with the 39 character letters attached. (Doc. No. 114.) Before sentencing, the Court reviewed a letter written by an Ivan Witenstein, which Defendant also included with his letter. (Doc. No. 130 at 4; Doc. No. 114 at 5, 23.) Therefore, at the time of sentencing, the Court did not receive from defense counsel 38 character letters. As noted, Defendant is challenging counsel's failure to provide these letters to the Court. However, 11 persons who authored unforwarded letters were present in court on the day of sentencing and testified through a proffer by counsel. The character letters before the Court at the time of sentencing are discussed in Section IV.A.3, *infra*.

his right to procedural due process was violated because the Government did not present evidence to support the amount of restitution ordered to be paid. (Id.)

## III. LEGAL STANDARD

Defendant alleges that his trial counsel was constitutionally ineffective and requests that the Court vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[4]  Section 2255 states that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Relief under § 2255 requires an error of law or fact constituting a "'fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)).  In reviewing a § 2255 motion, a court applies a more exacting standard than the plain-error standard applied in reviewing a direct appeal.  United States v. Frady, 456 U.S. 152, 165-66, 166 n.15 (1982).

A district court has discretion in determining whether to hold an evidentiary hearing on a § 2255 motion.  United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005); Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  In exercising that discretion, a district court "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the

---

[4]  In the Third Circuit, the preferable method for a federal prisoner to allege ineffective assistance of counsel is in a § 2255 motion rather than in a direct appeal.  Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (citing United States v. Sandini, 888 F.2d 300, 311-12 (3d Cir. 1989)).

existing record.'"  Booth, 432 F.3d at 545 (quoting Forte, 865 F.2d at 62).  A district court may summarily dismiss a § 2255 motion, rather than hold an evidentiary hearing, only when "the motion, files, and records 'show conclusively that the movant is not entitled to relief.'"  United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)); see also Booth, 432 F.3d at 545-46; Rule Governing § 2255 Proceedings for the U.S. District Courts 4(b) ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the [§ 2255] motion . . . .").  In contrast to the standard of review in considering the merits of a § 2255 motion, "'[t]he standard governing . . . requests [for evidentiary hearings] establishes a reasonably low threshold for habeas petitioners to meet.'"  United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005) (quoting Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)); Booth, 432 F.3d at 546.  Moreover, a prisoner's *pro se* pleading is construed liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Huertas v. Galaxy Asset Management, 641 F.3d 28, 32 (3d Cir. 2011).

## IV.    THE § 2255 MOTION

### A.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "[A] habeas petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that:  (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice."  Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 209-10 (3d Cir.

7

2012) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). A defendant faces a high bar in bringing an ineffective assistance of counsel claim. Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010).

To prove deficient performance, a defendant "'must show that counsel's representation fell below an objective standard of reasonableness . . . . The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Ross, 672 F.3d at 210 (quoting Harrington v. Richter, 131 S. Ct. 770, 787 (2011)). In analyzing whether counsel comported with professional standards, a court should be "highly deferential," "'indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Booth, 432 F.3d at 546 (quoting Strickland, 466 U.S. at 688-89).

To prove prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quotation and citation omitted). To show prejudice when a guilty plea has not been entered because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that he would have entered a guilty plea. See also, Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012) ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."); Lafler, 132 S. Ct. at 1385 (same). A reasonable probability is a

probability sufficient to undermine confidence in the outcome.'" <u>Gooding v. Wynder</u>, 459 F. App'x 83, 86 (3d Cir. 2012) (quoting <u>Strickland</u>, 466 U.S. at 694).

As noted, to prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and prejudice. <u>Strickland</u>, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id.</u> Courts evaluate the prejudice prong first:

> [The Third Circuit has] endorsed the practical suggestion in <u>Strickland</u> to consider the prejudice prong before examining the performance of counsel prong "because this course of action is less burdensome to defense counsel." <u>United States v. McCoy</u>, 410 F.3d 124, 132 n.6 (3d Cir. 2005); <u>see</u> <u>Strickland</u>, 466 U.S. at 694 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong "to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result").

<u>Booth</u>, 432 F.3d at 546.

As stated above, Defendant raises three grounds of ineffective assistance of counsel under the above standards: (1) counsel failed to inform him of the option to enter an open guilty plea; (2) counsel failed to object to the drug weight determination contained in the PSR and used in computing the sentencing guideline range; and (3) counsel failed to supply the Court with 39 character letters written on behalf of Defendant. (Doc. No. 131 at 16-27.) As discussed below, the evidence of record conclusively demonstrates that Defendant's allegations are without merit. Therefore, no evidentiary hearing is warranted.

1.      Failure to Inform of the Option to Enter Open Guilty Plea

First, Defendant asserts that his attorney was ineffective because counsel "never told [him] about the option to enter an 'open' plea." (Doc. No. 131 at 16-17; <u>see also</u> Doc. No. 139 at 2.) He argues that his attorney communicated to him that the only available plea option included cooperation with the Government. (Doc. No. 131 at 17 (stating that the only time counsel discussed "plea conversations" involved the Government "insisting upon cooperation"); <u>see also</u> Doc. No. 139 at 3.) Defendant contends that this amounts to deficient performance sufficient to satisfy the first prong under <u>Strickland</u>, citing the Third Circuit decision in <u>United States v. Booth</u>, 432 F.3d 542 (3d Cir. 2005). (Doc. No. 131 at 17.) Defendant's claim about the failure to be informed about the option to enter an open plea, however, is unpersuasive because there was no prejudice as required by <u>Strickland</u>.

The record supports a finding that even if defense counsel performed deficiently by not informing Defendant of the option to enter an open plea, no prejudice resulted as required by <u>Strickland</u>. Defendant has failed to demonstrate "that, but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence" by entering an open plea. <u>Booth</u>, 432 F.3d at 546-47; <u>see also</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). Defendant cites <u>United States v. Booth</u> as support for his claim that failure to inform a client of the option to enter an open plea may constitute deficient performance and prejudice. (Doc. No. 131 at 17; Doc. No. 139 at 4.) However, the facts of Defendant's case are far different from the facts in <u>Booth</u>, and this difference is critical to show why Defendant was not prejudiced by counsel's performance.

In Booth, the Third Circuit held that an evidentiary hearing was warranted based upon a defendant's claim that he was not informed of his option to enter an open plea and that, if informed, he would have pled guilty in order to obtain a 3-level reduction in offense level under the Federal Sentencing Guidelines for acceptance of responsibility. Booth, 432 F.3d at 548-49. The Court noted that a 3-level reduction would have decreased the defendant's Guideline range by 19 to 30 months and may have resulted in the imposition of a lower sentence:

> Based upon an offense level of 26 . . . and a criminal history category of III, [the defendant's] guideline offense level was 78 to 97 months imprisonment. Assuming that [the defendant] would have received a three-level reduction for acceptance of responsibility, he would have been subject to a guideline range of 57 to 71 months; however, because the statutory minimum sentence at [sic] count one was 60 months, the guideline range would have been 60 to 71 months imprisonment. . . . Because [the defendant] was actually sentenced to 90 months imprisonment, he arguably received a sentence of 19 to 30 months greater than what he would have received had he entered an open plea . . . .

Booth, 432 F.3d at 547.

In this case, the probation officer in the PSR calculated Defendant's sentencing guideline range as follows: Count One (conspiracy to manufacture) and Count Six (maintaining a place for manufacture) were grouped together and given an offense level of 26 under U.S.S.G. § 2D1.1(c)(7) because after the 1,664 marijuana plants were converted to a weight under the Drug Equivalency Tables, there were between 100 kilograms and 400 kilograms of marijuana. (PSR at 19.) The offense level was increased by 2 levels under U.S.S.G. § 3B1.1(c) because Defendant was a manager of the conspiracy. (Id. at 20.) No other adjustments were made to the offense level. (Id.) Defendant had no prior convictions and therefore was placed in Criminal History Category I. (Id. at 21.) With this Criminal History Category and a total offense level of

11

28, the guideline range for imprisonment was 78 to 90 months.  (Id. at 27.)  Because Defendant

faced a mandatory minimum sentence of 10 years for the Count One conspiracy conviction, the

guideline range for imprisonment became 120 months pursuant to U.S.S.G. § 5G1.1(b).  (Id.)

At the June 1, 2011 sentencing hearing, the guideline range was lowered.  (Doc. No. 130

at 22-27.)  First, Defendant challenged the enhancement of 2 offense levels for his role as a

manager in the offense.  (Id. at 14-15.)  Because the evidence showed that Defendant managed

the building and not the participants, the 2-level increase under § 3B1.1(c) did not apply.  (Id. at

22-23.)  This ruling reduced the adjusted offense level to 26, but the 10-year mandatory

minimum still applied.  (Id. at 23.)

Defendant next argued that the safety-valve guideline in U.S.S.G. § 5C1.2 applied to him

because he met the five criteria set forth in the guideline.  (Id. at 23-24.)  Defendant did meet the

criteria and the Court made the appropriate findings to qualify Defendant for the benefit of the

safety-valve guideline.[5]  (Id. at 24-25.)  As a result of this finding, two benefits accrued to

Defendant.  First, pursuant to U.S.S.G. § 2D1.1(b)(16), the offense level is reduced by 2 levels.

U.S.S.G. § 2D1.1(b)(16).  Therefore, the Court found that Defendant's new offense level was 24.

(Doc. No. 130 at 27.)  With a Criminal History Category of I, the applicable guideline range

became 51 to 63 months.  (Id.)  Second, the Court was permitted to impose a sentence under the

---

[5]  The prosecution noted that Defendant met with the Government on two occasions after
sentencing.  (Doc. No. 130 at 24.)  At the second meeting, Defendant truthfully provided the
Government with all information he had about the offense of which Defendant was convicted.
(Id.)  Accordingly, the fifth criteria listed in § 5C1.2 was met.

mandatory minimum. (Id. at 24.)[6] Ultimately, the Court imposed a sentence of 60 months incarceration.

Had Defendant entered an open plea to the six-Count Indictment, he would have faced a mandatory minimum sentence of 120 months because the safety-valve guideline under § 5C1.1 does not apply to two Counts of the Indictment — Counts Three and Five. Defendant would have entered a guilty plea to Count Three charging him with manufacturing 1,000 or more marijuana plants within 1,000 feet of a school and aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2, and Count Five charging him with possessing with intent to distribute 1,000 or more marijuana plants within 1,000 feet of a school and with aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2. Section 5C1.2(a) (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) of the Guidelines, provides as follows:

> Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5)[.]

U.S.S.G. § 5C1.2(a).

Title 21 U.S.C. § 860(a), the offense charged in Counts Three and Five, is not listed as an offense to which the safety-valve guideline applies. This guideline was promulgated based upon enabling legislation found in 18 U.S.C. § 3553(f), which also does not include § 860 under its coverage. Regarding 18 U.S.C. § 3553(f), the Third Circuit has held:

---

[6] Defendant also argued for a downward adjustment for being a minimal participant. (Doc. No. 130 at 27-28.) This request was denied. (Id. at 32.)

13

By its terms, 18 U.S.C. § 3553(f) applies only to convictions under 21 U.S.C. §§ 841, 844, 846, 961, and 963. Section 860 is not one of the enumerated sections. It is a canon of statutory construction that the inclusion of certain provisions implies the exclusion of others. The doctrine of *inclusio unius est exclusio alterius* "informs a court to exclude from operation those items not included in a list of elements that are given effect expressly by the statutory language." In re TMI, 67 F.3d 1119, 1123 (3d Cir. 1995) (quoting Williams v. Wohlgemuth, 540 F.2d 163, 169 (3d Cir. 1976)), *cert. denied*, 517 U.S. 1163 (1996). . . .   In clear and unambiguous language, therefore, 18 U.S.C. § 3553(f) does not apply to convictions under 21 U.S.C. § 860, the "schoolyard" statute.

United States v. McQuilkin, 78 F.3d 105, 108 (3d Cir. 1996).

Because the safety-valve guideline does not apply to 21 U.S.C. § 860(a), if Defendant had entered an open plea to Counts Three and Five, he would have faced the penalty noted in § 860, which provides, in relevant part:

> Except to the extent a greater minimum sentence is otherwise provided by section 841(b) of this title, a person shall be sentenced under this subsection to a term of imprisonment of not less than one year.

21 U.S.C. § 860(a).  Under 21 U.S.C. § 841(b)(1)(A)(vii),[7] Defendant faced the greater mandatory minimum sentence of 120 months imprisonment.  Therefore, had he entered an open

---

[7] Title 21 U.S.C. § 841(b)(1)(A)(vii) states that:

**(b) Penalties**
Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

> **(1)(A)** In the case of a violation of subsection (a) of this section involving —
> * * *
> (vii) 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, **or** 1,000 or more marijuana plants regardless of weight[,]
> * * *

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . .

plea on Counts Three and Five of the Indictment, a 10-year minimum sentence was required to be imposed.

These facts demonstrate beyond peradventure that the sentencing aspect of this case is radically different from the sentencing proceeding in Booth. In Booth, the defendant would have received an offense level reduction for acceptance of responsibility had he entered an open plea. He could benefit from that reduction because the mandatory minimum sentence he faced did not effectively prevent his guideline range from decreasing. Booth, 432 F.3d at 547.

Here, although Defendant may have received the benefit of an offense level reduction for acceptance of responsibility and a reduction of 2 offense levels because he qualified for the safety-valve, he still faced a 10-year mandatory minimum on Counts Three and Five because U.S.S.G. § 5C1.1 does not apply to the offense charged in those Counts.[8] Even if the safety-valve guideline applied to a conviction on any of the other four Counts, it would not save him from the mandatory minimum on Counts Three and Five. Thus, Defendant suffered no prejudice by not entering an open plea because doing so would have exposed him to a mandatory minimum sentence of 120 months under Counts Three and Five, with no prospect of relief under the safety-valve guideline.[9] Furthermore, by going to trial and being acquitted on those Counts, Defendant

---

[8] Giving Defendant the benefit of these offense level reductions would have resulted in an offense level of 21 with a guideline range of 37 to 46 months. However, the statutory minimum would elevate his guideline range to 120 months. U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guidelines range, the statutorily required minimum sentence shall be the guideline sentence.").

[9] Although the jury acquitted Defendant on Counts Three and Five, this does not undermine the fact that he would have pled guilty to those Counts had he entered an open plea.

received a 60-month sentence, which is significantly lower than the sentence he faced if he had entered an open plea to the Indictment.

Because Defendant has failed to demonstrate prejudice for this ineffective assistance of counsel claim, there is no need to discuss the deficiency prong. Because no prejudice resulted, there was no denial of effective assistance of counsel.[10]

In addition, unlike Booth, who averred that he would have pled guilty if informed of the option to enter an open plea, Booth, 432 F.3d at 548, Defendant has previously stated on the record that he would not plead guilty. (Doc. No. 114 at 1.) In the letter sent to the Court about one week after sentencing, Defendant stated that he "chose to fight because [he] was terrified of losing [his] wife and children." (Id.) Defendant now asserts that "[his] case was never about guilt." (Doc. No. 139 at 3; see also Doc. No. 131 at 19.) Defendant's earlier statement, however, occurred closer in time to his decision to plead not guilty and to proceed to trial, and shows that Defendant chose to have a trial in an attempt to avoid any period of incarceration. Moreover, in

---

[10] Defendant relies on an email he received from his lawyer in which his lawyer said that the Judge made it clear that he was disturbed that Defendant went to trial and "felt" that his case cried out for release but only if Defendant pled. (Doc. No. 131, Ex. 1.) Defendant previously made this assertion in the letter to the Court dated June 6, 2011. (Doc. No. 114.) The letter requested reconsideration of sentencing in part based upon this claim. (Id.) Reconsideration was denied because there was no legal basis under Fed. R. Crim. P. 35(a) to resentence Defendant. (Doc. No. 113 at 1.) Moreover, as the Court noted in an Order dated June 10, 2011:

> The Court did not participate in plea negotiations or state that it was disturbed that Defendant went to trial. A defendant has a constitutional right to trial by jury. At no time prior to sentencing did the Court inform counsel what sentence would be imposed. All conversations about this case in which counsel participated took place in the presence of both counsel for Defendant and counsel for the Government.

(Id. at 1 n.1.)

his letter to the Court dated August 4, 2012, Defendant notes that "[t]he Government is right that Petitioner did not want to face a 10-year sentence. And, sentence length is a primary motivator for criminal defendants." (Doc. No. 144 at 1.) These prior statements of Defendant show that he would not have entered an open plea knowing that he faced the 10-year mandatory minimum.

Furthermore, Defendant had been a licensed attorney in Pennsylvania and New Jersey before being prosecuted in this case. (Doc. No. 130 at 38, 53-58.) As a lawyer admitted in two states, the Court is unpersuaded that Defendant would have no knowledge of the availability of entering an open guilty plea. In view of his decision to fight the case because he "was terrified of losing [his] wife and children," and his statement that he did not want to face a 10-year mandatory minimum, it appears that he is now reversing course and alleging that he would have entered an open plea only because he found the <u>Booth</u> decision and is attempting to use it to overturn his conviction. Defendant, however, was on notice that he could enter an open plea from the date of his arraignment on July 29, 2010, when he was asked before the U.S. Magistrate Judge whether he would plead guilty or not guilty to the offenses charged in each Count. At the time of the arraignment, Defendant had known for over a year about the investigation and the likelihood that he faced prosecution for his involvement in the marijuana grow operation. If Defendant's current assertion that "[his] case was never about guilt" was true, he could have entered an open plea when he was arraigned and had the opportunity to do so. He also had adequate time before the arraignment to make a decision to plead guilty. However, he chose to enter a plea of not guilty at the arraignment and persisted in that plea until his conviction for offenses with mandatory minimum periods of incarceration. Accordingly, for all the above

reasons, his claim that he would have entered an open guilty plea had his lawyer informed him of this option is unavailing.

2.       Failure to Object to the Drug Weight Determination

Next, Defendant argues that defense counsel performed deficiently by failing to object to the quantity of marijuana attributed to him in the PSR.  (Doc. No. 131 at 20-21.)  Defendant asserts that counsel should have objected to the Court's reliance on the language of the Sentencing Guidelines in determining that 1,664 marijuana plants equates to 166.4 kilograms of marijuana.  (Id. at 22; Doc. No. 139 at 8.)  He claims that "the plant count of 1600 plants belies the size" of the scheme, and that his attorney should have argued that marijuana law has shifted toward using actual weight rather than approximated weight based on plant count.  (Doc. No. 131 at 22.)  He contends that the evidence presented at trial and the "consistent, methodical and controlled" process by which the marijuana was cultivated permits a finding that, at most, the American Street grow operation yielded 40.9 kilograms of marijuana, and that his counsel knew or should have known of this lower estimate.  (Id. at 23.)  Although Defendant argues that the actual, not approximate, weight should have been used in his case, the PSR's findings, as adopted by the Court, included proper calculation of the drug quantity for which Defendant is responsible.

According to the PSR, "[D]efendant is responsible for conspiring to manufacture, manufacturing, and possessing with intent to distribute 1,664 marijuana plants."  (PSR at 19.)

This finding relates to his conviction on Count One for conspiring to manufacture 1,000 or more marijuana plants, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  Defendant was convicted of violating 21 U.S.C. § 846, which states that:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846.  The object of Defendant's conspiracy was to manufacture 1,664 marijuana plants, a violation of 21 U.S.C. § 841(a)(1).  As previously noted, the penalties for a violation of § 841(a)(1) are found in 21 U.S.C. § 841(b)(1)(A)(vii), which provides:

> **(b) Penalties**
>
> Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
>
> > **(1)(A)**  In the case of a violation of subsection (a) of this section involving —
> > * * *
> >
> > (vii) 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, **or** 1,000 or more marijuana plants regardless of weight[,]
> > * * *
>
> such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . .

21 U.S.C. § 841(b)(1)(A)(vii) (emphasis added).  Thus, the penalty provision in subsection (b)(1)(A)(vii) provides that either the weight of the marijuana **or** the quantity of marijuana plants should be used to determine the sentence of a defendant.  The probation officer correctly used the quantity of plants in the guideline calculation.  Moreover, under the Sentencing Guidelines, the following direction is provided:

In the case of an offense involving marihuana plants, treat each plant, regardless of sex, as equivalent to 100 G of marihuana. *Provided*, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

U.S.S.G. § 2D1.1, comment (E) (emphasis in original).

Here, Defendant is responsible for 1,664 marijuana plants. Applying the first sentence of comment (E), Defendant would be accountable for 166,400 grams of marijuana, or 166.4 kilograms. Defendant argues that the actual weight yielded by the grow operation was 40.9 kilograms of marijuana. This amount is less than the converted weight for the plants and therefore under the second sentence, or the "provided" portion, of comment (E), the actual weight calculated by Defendant is less than the weight described in the first sentence in comment (E), not greater. Accordingly, the actual weight of the marijuana would not be used in this case. (See PSR at 19.)

Once the weight has been determined, the "Drug Quantity Table" found in § 2D1.1(c) of the Guidelines specifies the base offense level for sentencing. See U.S.S.G. § 2D1.1(c). Under § 2D1.1(c)(7), the base offense level for "[a]t least 100 KG but less than 400 KG of Marihuana" is an offense level of 26. In this case, the weight of marijuana plants for which Defendant is accountable is 166.4 kilograms, well within the range stated in the table at § 2D1.1(c)(7). This is the same base offense level referred to in the PSR and used by the Court at Defendant's sentencing hearing. (PSR at 19; Doc. No. 130 at 23.) Therefore, the base offense level was correctly determined pursuant to the Sentencing Guidelines.

In sum, the finding in the PSR regarding the weight of marijuana for which Defendant is responsible was correctly calculated. Defense counsel's failure to object to the applicable weight

of marijuana included in the PSR did not constitute deficient performance because the computation in the PSR was a proper application of the Sentencing Guidelines. Consequently, this ineffective assistance of counsel claim fails.[11]

### 3. Failure to Adequately Supply the Court with Available Character Evidence

As his final ineffective assistance claim, Defendant argues that defense counsel's failure to forward all character letters to the Court constituted deficient performance that resulted in unfair prejudice. (Doc. No. 131 at 24; Doc. No. 139 at 9.) Counsel failed to send 38 character letters to the Court for consideration at sentencing. (See Doc. No. 114.) Defendant sent the unforwarded letters to the Court about one week after sentencing when he sought reconsideration of the sentence. (Id.) He argues that counsel's failure to send the additional letters constitutes deficient performance sufficient to meet the performance prong of Strickland. (Doc. No. 131 at 26.) Defendant further notes that the Court necessarily would have considered these letters in imposing an adequate sentence, and argues that depriving the Court of available character evidence constituted prejudice sufficient to meet the second prong of Strickland. (Id. at 24-25.)

---

[11] In addition, the Court finds unpersuasive Defendant's contention that drug policy and the Sentencing Guidelines warrant a lesser sentence. Despite Defendant's suggestion that "the plant count of 1600 plants belies the size of the American Street grow operation and overstates the seriousness of Petitioner's offense," (Doc. No. 131 at 22), the Court found quite the contrary. As the Court stated during the sentencing hearing, "this was a most serious offense because it was an organized conspiracy involving at least ten, if not more, people." (Doc. No. 130 at 59.) Defendant was a co-manager and partner of a large scale grow operation which produced marijuana monthly and he applied his legal training and skill to conduct transactions on behalf of the criminal enterprise. (Id.; PSR at 16.)

The Court has acknowledged that it did not receive the additional character letters before sentencing. (See Doc. No. 113.) However, assuming that such a failure on counsel's part constitutes deficient performance, Defendant was not prejudiced.

At the time of sentencing, the Court had read 9 character letters forwarded by counsel. (Doc. No. 130 at 4.) During the sentencing hearing, counsel proffered the testimony of 14 additional character witnesses who were present in the courtroom:

> Judge, I don't intend to call them individually as witnesses, but they would all testify - - some of whom wrote letters - - they would all testify how [Defendant] touched their lives and how their - - enough to come down here to support him in this time. Many echoed sentiments outside before we started today, about [Defendant's] non-charging people to do minimal tasks at law, that is, did a property settlement, helped you obtain a mortgage, guide you through things. And as two of the people in the back said, it was always "No charge, it really wasn't that aggravating, don't worry about it." And I think that's important, because we as lawyers - - it's one of the few things we could do to help people, and that's one of the things [Defendant] did[.]

(Id. at 36-37.) These witnesses were Robert Creamer, Joanne Creamer, Steven Creamer, Dawn Creamer, Joan Creamer, Christina Creamer, Gretchen Regan, Adam Schwartz, Peter Woodall, Dominic Episcopo, Dawn Episcopo, Bridget Fuscia, Dominic Fuscia, and Seth Donkochik. (Id. at 36).

Of the 38 unread character letters forwarded by Defendant after sentencing, 11 were written by character witnesses whose testimony counsel proffered at the hearing. The Court accepted these representations about the testimony as true and took them into account in sentencing. (Id. at 58.) In addition, the Court knew that Defendant had no prior criminal record and was a lawyer admitted to practice in Pennsylvania and New Jersey who had a wife and two

young children.  The Court believed that Defendant was of good character aside from this offense.

At best, the additional character letters would have been cumulative, as the Court was already well informed of Defendant's good character apart from the offenses of conviction.  The Court stated as much in its Order dated June 10, 2011, responding to Defendant's letter forwarding the additional character letters.  (Doc. No. 113 at 3 ("Further, even if the Court had considered all of these character letters at the time Defendant was sentenced, the same sentence would have been imposed.").)  Therefore, Defendant suffered no prejudice by counsel's failure to forward the additional character letters and his ineffective assistance of counsel claim for this failure is without merit.

### B.       Procedural Due Process Claim

Finally, Defendant claims that he was deprived of due process because the Government did not present evidence to support the amount of restitution ordered to be paid to PECO.  In a dispute about the proper amount of restitution, the Government bears the burden to prove the appropriate amount by a preponderance of the evidence.  18 U.S.C. § 3664(e).  The preponderance of the evidence standard comports with due process when ordering restitution.  See  United States v. Vitillo, 490 F.3d 314, 330 (3d Cir. 2007) (affirming restitution order found by preponderance of the evidence); United States v. Hardy, 707 F. Supp. 2d 597, 610 n.11 (W.D. Pa. 2010) (citing United States v. Grier, 475 F.3d 556, 568 (3d Cir. 2007)) (noting that the preponderance of the evidence standard meets due process standards in the context of the Sentencing Guidelines).

Defendant claims that the Court's order requiring the payment of restitution in the amount of $91,943.08 violated his procedural due process right under the Fifth Amendment to the United States Constitution because the Government never proved the actual loss by a preponderance of the evidence. (Doc. No. 131 at 27-29.) Because Defendant was convicted of violating 18 U.S.C. § 856(a)(2) (Maintaining Drug-Involved Premises), the Court was required to order "that the defendant make restitution to the victim of the offense . . . ." 18 U.S.C. § 3663A(a)(1); 18 U.S.C. § 3663A(c)(1)(A)(2). PECO "put in for a claim of $91,943 in electricity that it did not get paid for during the duration of this conspiracy at the North American Street warehouse." (Doc. No. 130 at 52.) Defendant disputes this figure, arguing that the Government never "proved the amount of actual loss as required under 18 U.S.C. § 3664(e)" and that "in the absence of an accurate, metered calculation of loss, the Court failed to adopt a reasonably reliable measure of the actual loss calculation." (Id. at 27; see also Doc. No. 139 at 11.) The Court finds Defendant's contention to be unpersuasive based on statutory language and the record.

   Though Defendant correctly notes that a metered calculation would be the most exact method by which to calculate the cost of illegally siphoned electricity, a meter is not the only method to meet the preponderance of the evidence standard. See Vitillo, 490 F.3d at 330 (finding that $317,760 restitution order was supported by a preponderance of the evidence when based on investigating agent's testimony of inflated bills and resulting loss, which was included in the presentence report and recapitulated at the sentencing hearing); United States v. Jacobs, 167 F.3d 792, 797 (3d Cir. 1999) (finding restitution order met preponderance of the evidence standard when supported by victim's physicians' records, insurer's records, and employer's records establishing the figures required to calculate restitution).

The record here contains ample evidence demonstrating by a preponderance of the evidence that the American Street scheme pirated electricity from PECO resulting in a loss of $91,943.08.  The PSR relied upon a figure generated by Thomas J. Marshall, Senior Security Specialist for PECO, who based the amount calculated upon his usage estimates, findings, and calculations.  (Doc. No. 138 at 22.)  The Court adopted the undisputed factual statements of the PSR, which included Marshall's figures.  (Doc. No. 130 at 26.)  Under these circumstances, no due process violation occurred, and Defendant is responsible for the restitution ordered to be paid.

## V.    CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Vacate, Set Aside, or Correct [a] Sentence that he has brought pursuant to 28 U.S.C. § 2255.  No hearing is warranted and no certificate of appealability will be issued.[12]

An appropriate Order follows.

---

[12]  Under 28 U.S.C. § 2253(c)(2), a "certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right."  For the reasons stated in the foregoing Opinion, Defendant has not made such a showing.  Therefore, a certificate of appealability will not be issued.  See United States v. Pinnock, No. 09-1309, 2011 WL 465570, at *5 (W.D. Pa. Feb. 4, 2011).